hDAVID S. GORBATY, Judge.
Plaintiffs-Appellants, a lesbian and gay civil organization, and several lesbian and gay citizens (“LEGAL”), sued the State of Louisiana, its Attorney General and the District Attorney of Orleans Parish, the latter both individually and as the class representative of all of the prosecutors in and for the State of Louisiana. Plaintiffs sought a declaration that the Louisiana Crime Against Nature statute, La. R.S. 14:89, and several statutes extending its effects, La. R.S. 12:1041, 15:535, 15:536, 15:538, 15:540, 15:542, 15:542.1, 15:543, 15:544, 15:545 and 15:549, are unconstitutional. Plaintiffs alleged that the targeted statutes: (a) are arbitrarily applied and arbitrarily enforced against plaintiffs as gay men and lesbians and reward police misconduct in such application and enforcement in violation of La. Const, art. I, 2 and 3; (b) deny plaintiffs equal protection of the laws on the basis of sex, physical condition, birth, culture, and religion in violation of La. Const, art. I, 3; (c) intrude upon the privacy of the individual plaintiffs in violation of La. Const, art. I, 5; (d) curtail and restrain the plaintiffs’ freedom of speech and of the press in violation of La. Const, art. I, 7; (e) constitute a state endorsement of religious beliefs and an establishment of religion in violation of La. Const, art. I, 8; (f) impair plaintiffs’ right to assemble ^peaceably and to petition the government for a redress of grievances in violation of La. Const, art. I, § 9; (g) discriminate, on the basis of physical condition, against plaintiffs in their access to public areas in violation of La. Const, art. I, 12; (h) subject plaintiffs to cruel, excessive, and unusual punishment in violation of La. Const, art. I, 20; and (i) constitute bills of attainder in violation of La. Const, art. I, 23.
After a five-day bench trial, Judge Carolyn Gill-Jefferson declared La. R.S. *1020 14:89(A)(1)[1] unconstitutional on privacy grounds “only insofar as it prohibits noncommercial, consensual, private sexual behavior by adult human beings,” and further declared the remainder of the targeted statutes unconstitutional only as they relate to the prohibition of La. R.S. 14:89(A)(1). The judgment did not address the other constitutional grounds raised by plaintiffs. Plaintiffs subsequently appealed to the Louisiana Supreme Court.
At the same time, plaintiffs filed a motion for new trial in the district court, contending that it should have explicitly addressed all of the constitutional issues raised, not just the right to privacy. The district court granted the motion for new trial to make some non-substantive changes in the March 17, 1999 judgment, but otherwise denied plaintiffs’ motion. On April 28, 1999, in oral reasons for judgment, the trial court rejected “all of plaintiffs’ other grounds for declaring the targeted statutes unconstitutional.”
^Plaintiffs appealed to this court the portions of the judgment declaring the targeted statutes constitutional. On June 14, 2000, the Louisiana Supreme Court issued an order staying the proceedings here.
On July 6, 2000, the Louisiana Supreme Court rendered an opinion in State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501, finding La. R.S. 14:89(A)(1) to be constitutional. Thereafter, the court remanded the instant case to the district court for reconsideration in light of Smith. The court also lifted the stay of proceedings pending in this court.
On remand, the district court again found La.R.S. 14:89(A)(1) to be in violation of Article I, Section 5 of the Louisiana Constitution. Defendants appealed this holding to the Louisiana Supreme Court.
On November 14, 2001, this court dismissed plaintiffs’ pending appeal for lack of jurisdiction, stating that jurisdiction properly lay with the Louisiana Supreme Court. This court denied plaintiffs’ subsequent application for an en banc rehearing, and transferred the appeal to the Louisiana Supreme Court.
On March 28, 2002, relying on Smith, supra, the Louisiana Supreme Court vacated the judgments of the district court invalidating the targeted statutes based upon Article I, Section 5 of the Louisiana Constitution. Further, the Supreme Court decreed that “[b]ecause we have disposed of the appeal before us relating to the privacy issue, we will transfer plaintiffs’ appeal of the remaining constitutional issues to the Court of Appeal, Fourth Circuit, for consideration under its appellate jurisdiction.” Louisiana Electorate of Gays and Lesbians, Inc. v. State, 99-3357 (La.3/28/02), 812 So.2d 626.
| ¿PLAINTIFFS’ ASSIGNMENTS OF ERROR
Plaintiffs assert that the trial judge erred in dismissing the actions of original plaintiffs Bowers and Ladnier. Plaintiffs argue that Ladnier was present at the trial and should not have been dismissed. Further, they complain that the dismissal was “without prejudice” in the original Judgment, but “with prejudice” in the second set of Reasons for Judgment. , Such a *1021 dismissal is improper under La. C.C.P. art. 1672, they aver.
After trial, the trial court rendered a judgment dismissing Bowers and Ladnier sua sponte, “without prejudice pursuant to Code of Civil Procedure article 1672(A)(2) due to their failure to appear for trial.” Plaintiffs filed a motion for new trial, challenging that ruling, among others, and arguing that the court could not supply that kind of dismissal without prejudice on its own motion. Subsequently, the trial court essentially withdrew its dismissal of the plaintiffs without prejudice pursuant to C.C.P. art. 1672(A)(2), and dismissed the plaintiffs’ cumulated actions on the merits, and therefore with prejudice, for their failure to testify and establish by sufficient proof at trial their own individual circumstances and personal interest in the subject matter of the suit.
The trial judge explained:
The court must dismiss these plaintiffs’ claims with prejudice due to their failure to establish at trial their interest and standing.
The court is not persuaded by any of the plaintiffs’ arguments to the contrary. The court set aside five days for the trial of this matter. During the trial, plaintiffs’ counsel made no statement to the court that Ms. Ladnier was ready and able to testify but could not do so due to its time constraints.
| «¡Furthermore, the plaintiffs did not proffer the testimony of Ms. Ladnier, Mr. Bowers, or Mr. Foster. Nor did the plaintiffs request a stipulation from defendants.
The plaintiffs did not bring one action as a class of plaintiffs. Every plaintiff has alleged a separate action on behalf of himself or herself, and these separate actions have been cumulated in this one suit. As such, each named plaintiff is required to prove that he or she has a real and actual interest in the suit. Plaintiffs Bowers and Ladnier did not present adequate evidence of their standing and interest in the instant case. The trial judge did not ultimately rely upon La. C.C.P. art. 1672 in dismissing Bowers and Ladnier, but rather based their dismissal on their failure to prove their cases. As such, we find that the trial judge did not err in dismissing them. Further, we amend the original judgment to read that these plaintiffs are dismissed “with prejudice,” as stated in the Reasons for Judgment.
Plaintiffs aver that the trial judge erred in sustaining various hearsay and relevancy objections and in barring proffered testimony.
Plaintiffs object to the trial court’s exclusion of a statement purportedly made by a New Orleans city police officer to witness Best after a police “sensitivity training” session. They argue that the statement should have been admitted as a statement against interest because the officer serves in a representative capacity for the State as its employee and agent. However, we find that the city police officer is the employee, representative, and agent of the City of New Orleans, which is a local municipal corporation with an independent “home rule” charter. La. Const. (1974) art. 6, Section 4; Police Ass’n of New Orleans v. City of New Orleans, 94-1078 (La.1/17/95), 649 So.2d 951; R.S. 42:1441-1441.3. As such, this argument lacks merit.
Plaintiffs also contend that the trial court should have admitted Commissioner Donald Gorton’s expert testimony on the history and practice of the common law of England as received into America, with particular reference to Crime Against Nature. The trial court refused to accept Commissioner Gorton as an expert despite *1022 his outstanding qualifications, plaintiffs assert.
In rejecting Commissioner Gorton, the trial judge stated that she was “well aware as to the historical evolution of the Louisiana Civil Code as it relates in some instances to the common law and has the ability to interpret it along with the facts being presented in this case.” We find that the trial judge’s decision to exclude Gorton’s testimony was proper and well within her broad discretion.
Plaintiffs complain that the trial court erroneously barred expert testimony from two clergymen, Dr. Hotchkiss and Pastor Brecht, on the tenets and beliefs of their denominations and the effect the Crime Against Nature statute has on their denominations’ ability to have lesbian and gay ministers.
The trial judge found that the potential testimony of the clergymen was not relevant to plaintiffs’ constitutional challenges to the statutes in question. To be relevant, the evidence must tend to prove or disprove a fact “that is of consequence to the determination of the action.” La.Code of Evidence art. 401. We find that the trial judge did not abuse her discretion in excluding the testimony.
^Plaintiffs also contend that the trial court erred excluding as hearsay certain possible testimony by State Representative Edwin Murray. The trial judge did not permit Rep. Murray to reveal statements made by various legislators that an attempt to repeal the Crime Against Nature statute would fail for antigay reasons. Plaintiff argues that such assertions are statements against interest and thus admissible.
The trial court stated that “any off-the-record conversations [Rep. Murray] may have had with other legislators is hearsay and therefore is inadmissible.” We agree, and find that the trial judge did not err in excluding them.
Plaintiffs aver that the trial court erred in barring their expert on political campaigns, William Schultz, from testifying about the statute’s discriminatory effect on gay candidates. The court sustained relevancy objections, stating, “The statute before the Court refers to acts. It does not refer to anything else. And as you are citing this witness’ testimony, we want this witness to testify that ... members of the gay and lesbian community are prohibited from running for public office based on this statute ... And whether or not that is true is not relevant to this determination of constitutionality.” We agree, and find that the trial judge properly excluded the testimony as irrelevant.
Plaintiffs next argue that the trial court erred in permitting Richard Cohen to testify as an expert witness in “psychotherapy and counseling-psychology [with an] emphasis on healing homosexuality.” Plaintiffs objected to Mr. Cohen being recognized as an expert, arguing that he is not licensed in this or any other state for anything, including psychotherapy or mental health counseling.
|sMr. Cohen possesses as master’s degree in psychology and has practiced as a counselor for many years. The record shows that he is a member of professional organizations and has presented many publications to them. We find that the trial judge did not err in qualifying Mr. Cohen as an expert in these fields.
Plaintiffs complain that the trial court erred in ruling that the targeted statutes do not discriminate arbitrarily, capriciously, and unreasonably on the basis of sex, physical condition, birth, or culture. Further, the trial court erred in holding that the targeted statutes do not discriminate on the basis of religious ideas, beliefs, *1023 or affiliations, and that the statutes do not respect an establishment of religion or prohibit the free exercise thereof. Plaintiffs also allege that the trial court erred in ruling that the targeted statutes were not enacted and are not maintained because of a discriminatory legislative purpose and intent.
The Louisiana Supreme Court, in State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973 (Baxley II), addressed the issue of discrimination with respect to a statute that does not discriminate on its face. Under the stipulation in this case, R.S. 14:89 is facially neutral in its entirety and is governed by the Baxley II standard; accordingly, what is said in Baxley II about claimed discrimination and R.S. 14:89(A)(2) applies equally to R.S. 14:89(A)(1). In Baxley II, the Louisiana Supreme Court explained:
Generally, the state constitutional guarantee of equal protection mandates that state laws affect alike all persons and interests similarly situated. State v. Petrovich, 396 So.2d 1318, 1322 (La.1981). This guarantee does not, however, take from the state all power of classification. In Sibley v. Bd. of Supervisors of Louisiana State Univ., 477 So.2d 1094, 1107 (La.1985), reh’g denied, this court set forth the analysis required by the state’s equal protection guarantee in the face of a legislative classification. However, in the present case, we find no legislative | ¡¡classification on the face of the statute. To the contrary, the statute, on its face, is neutral. It applies equally to all individuals — male, female, heterosexual and homosexual. The statute punishes conduct — solicitation with the intent to engage in oral sex or anal sex for compensation. The statute does not single out gay men or lesbians for punishment. Rather, it punishes conduct which the state has deemed to be against the public interest. For these reasons, we hold that La.R.S. 14:89(A)(2) [as well as R.S. 14:89(A)(1) now in this case] does not, on its face, violate the state equal protection guarantee.
A statute, though facially neutral, may still be challenged as constitutionally infirm if the challenger can prove that the statute was enacted because of a discriminatory purpose. Personnel Admin. of Massachusetts v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). “ ‘Discriminatory purpose’ ... implies more than intent as volition or intent as awareness of the consequences.... It implies that the de-cisionmaker, in this case a state legislature, selected or reaffirmed a particular course of action at least in part ‘because of,’ not merely ‘in spite of,’ its adverse effects upon an identifiable group.” Id. at 279, 99 S.Ct. at 2296 (citations and footnote omitted). Disparate impact upon the identifiable group, while relevant, is not dispositive of this issue. That disparate impact must be traced to a discriminatory purpose to support a claim that the statute is unconstitutional under the equal protection clause. Id. at 272, 99 S.Ct. at 2292. Given the presumption of the constitutionality of legislation which does not classify on its face, it is incumbent upon the challenger of the legislation to prove the discriminatory purpose. In the present case, the record is devoid of any evidence that the crime against nature statute was enacted for the purpose of discriminating against gay men and lesbians. Therefore, the statute is not constitutionally infirm on these grounds.
Id. at pp. 6-8, 656 So.2d at 977-978.
Likewise, in the trial of this case, discriminatory purpose by the lawmaking body was not proven. Although plaintiffs attempted to adduce evidence of legislative *1024 intent and purpose by the testimony of Rep. Murray, it is well settled that one member of the legislature cannot testify as to the legislative intent of the whole lawmaking body. Macon v. Costa, 437 So.2d 806 (La.1983); Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290, 1293 (La.App. 1 Cir.1977). Rep. Murray testified that he had made his own individual arguments and expressed his own individual opinion to other legislators that the statute was discriminatory, |inand that the legislature has refused to repeal this statute. However, no evidence was introduced that the entire legislative body enacted these statutes for the purpose of discriminating against gay men and lesbians. As such, the statutes are not unconstitutional on these grounds, and this court need not address the subsidiary questions of whether such discrimination was on the basis of physical condition, culture, sex, or religion. Accordingly, we find that these assignments of error are without merit.
Plaintiffs next argue that the trial court erred in ruling that the targeted statutes do not impair the right to assemble peaceably or to petition the government for a redress of grievances, and that they do not curtail freedom of speech and of the press. Plaintiffs aver that the statutes intimidate the movement of gay political organizers and restrain gay people from joining civic and political organizations or otherwise publicly identifying themselves as lesbian, gay, bisexual, or transgendered. Further, the statutes expose gay people to criminal prosecution when revealing their sexual orientation.
In oral reasons for judgment, the trial court noted:
[Tjhere are publications such as Sunflower that report on issues concerning gay and lesbian persons. The State argues that while much of the information contained in the publication is inadmissible hearsay, there are articles reporting that gay and lesbian persons have picketed City Hall to voice their grievances to city officials and other articles publicizing a picnic and a rally in City Park. Furthermore, Mr. Beach, the president of plaintiff, LEGAL, testified that the Attorney General had not attempted to curtain LEGAL in its efforts to lobby [in] Baton Rouge or to limit its other political activities.
Additionally, while plaintiff, Mr. Best, testified that gay people are exposed to criminal prosecution simply for revealing their sexual orientation, this allegation was not confirmed by Mr. Penny’s study.
InThe state concludes that the above demonstrates that gay and lesbian citizens are engaging in free speech, are assembling, are petitioning the government, and are granted access to public areas.
Considering the law and evidence, the court finds that there is insufficient evidence to hold the targeted statutes deny plaintiffs access to public areas, impair their ability to assemble, and to petition or restrain their freedom of speech.
We find that the trial court’s findings are reasonable in light of the record. The evidence presented at trial did not support the plaintiffs’ contention that their freedoms of speech and assembly are compromised in any way.
Plaintiffs assert that the trial court erred in ruling that the targeted statutes do not subject persons to cruel, excessive, or unusual punishment.
The trial court based its ruling, in part, on State v. Telsee, 425 So.2d 1251 (La.1983). The Telsee court examined several factors in determining whether the sentence by its excessive length or severity is greatly disproportionate to the underlying *1025 offense: “Insight into the nature of the offender and his offense may be gained by asking, for example, whether (1) there is undue risk the defendant will commit another crime, (2) the defendant needs to be institutionalized, (3) a lesser sentence will deprecate the seriousness of defendant’s crime, (4) defendant’s conduct caused or threatened harm, (5) defendant has a criminal record, (6) defendant will respond to rehabilitation.” Id. at 1253. The court also compared the defendant’s punishment with the sentences imposed for similar crimes by the same court and other courts, as well as the legislative purpose behind the punishment.
hJn analyzing these factors as they apply to the instant case, the trial court noted that the plaintiffs failed to present evidence as to the legislative purpose behind the penalty, or how other courts sentence individuals convicted of violating La. R.S. 14:89(A)(1). The court also referred to Baxley II, supra, in which the Supreme Court reviewed the penalties imposed in other jurisdictions for sodomy and found that some were more severe than those imposed by Louisiana, and some were less severe. After considering the evidence and law, we find no error in the trial judge’s ruling that there is insufficient evidence to hold that the targeted statutes provide for cruel, unusual, and excessive punishment.
Finally, plaintiff argues that the trial court erred in ruling that the targeted statutes are not bills of attainder. The United States Supreme Court has defined such bills as “legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.... ” United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715, 14 L.Ed.2d 484 (1965). These statutes are clearly not bills of attainder. They do not apply to easily ascertainable members of a group; they apply to everyone who engages in the proscribed conduct. In addition, they do not inflict punishment without a judicial trial. A person must be convicted of the offense after a trial by judge or jury before any punishment can be imposed. Therefore, we find that the trial judge correctly ruled that the targeted statutes are not bills of attainder.

J^DEFENDANTS’ ASSIGNMENTS OF ERROR

Defendants argue that the district court erred by casting the defendants with all costs of the proceedings prior to the remand, including the fees set for plaintiffs’ experts, virtually all of whom testified only with respect to factual matters, actions, and claims that plaintiffs lost on the merits. Defendants assert that since they have prevailed in this case, the costs should not be taxed against them.
La. C.C.P. art.1920 provides, “Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
It is the general rule that a party cast in judgment is taxed with the costs of the proceedings. However, the trial court may assess costs in any equitable manner, and its assessment will not be reversed on appeal in the absence of an abuse of discretion. Adams v. Canal Indemnity Co., 99-1190 (La.App. 3 Cir. 5/10/00), 760 So.2d 1197; Spillers v. ABH Trucking Co., Inc., 30,332 (La.App. 2 Cir. 4/13/98), 713 So.2d 505. The trial court is vested with great discretion in determining who is liable for costs of court; it may assess costs against any party in any pro *1026 portion it deems equitable, even against the party prevailing on the merits. Greene v. Greene, 94-79 (La.App. 3 Cir. 10/5/94), 643 So.2d 891; D.B. Orban Co. v. Lakco Pipe, 496 So.2d 1382 (La.App. 3 Cir.1986). We cannot say that the trial judge abused her discretion in apportioning the costs of the proceedings prior to remand to defendants. This assignment of error lacks merit.
1 ^Because we have rejected the plaintiffs’ assignments of error, and have found in favor of the defendants on those issues, the defendants’ remaining two assignments of error are moot. As such, we need not address them.

CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed as amended.

AFFIRMED as amended

JONES, J., dissents with written reasons to follow.

. La. R.S. 14:89(A)(1) defines crime against nature as "the unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.”